UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELO SMITH and STATE OF
MICHIGAN, DEPARTMENT OF LICENSING
AND REGULATORY AFFAIRS, WAGE AND
HOUR DIVISION,                                    Case No. 12-cv-12967

       Plaintiffs,                            Honorable Steven J. Murphy, III
v.                                                Mag. Judge Laurie J. Michelson

DETROIT ENTERTAINMENT, LLC, d/b/a
MOTORCITY CASINO,

       Defendant.
_____/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S
MOTION TO REMAND [DKT. 8]**

This matter is before the Court on Plaintiff State of Michigan, Department of Licensing and Regulatory Affairs, Wage and Hour Division's Motion to Remand the case to the Michigan Administrative Hearing System. (Dkts. 8, 12.) The federal removal statutes provide for the removal of civil actions, by defendants, from a "State court." 28 U.S.C. §§ 1441(a), 1446(a). This Motion raises a legal issue not yet addressed by the Sixth Circuit Court of Appeals and on which several other Circuits are divided: Is a state administrative agency a "State court" from which a matter may be removed to federal court? For the reasons set forth below and on the record during the October 24, 2012 hearing, the Court answers this dispositive question in the negative and RECOMMENDS that Plaintiff's Motion to Remand be GRANTED.

## I.    BACKGROUND

### A.    State Administrative Agency Proceedings

Plaintiff Angelo Smith ("Smith") is a former security guard for Defendant Detroit Entertainment, LLC, d/b/a/ Motor City Casino ("Defendant" or "Motor City"). (Dkt. 1, Not. of

Removal, ¶ 1.)  On  February 2, 2012, Plaintiff Michigan Department of Licensing and Regulatory Affairs, Wage and Hour Division ("Wage and Hour Division") opened, and subsequently investigated, a claim initiated by Smith for unpaid wages pursuant to the Michigan Wages and Fringe Benefits Act, Mich. Comp. Laws § 408.471, *et seq*. ("MWFBA").  (Not. of Removal, Ex. B, WHD Determination Summary at 1.)  The Wage and Hour Division is the administrative body charged with administering and enforcing the MWFBA.  (Dkt. 8, Mot. To Remand, ¶ 1.)

Smith advised the Wage and Hour Division investigator that Motor City required its security guards to attend a roll-call 15-minutes prior to the start of their assigned shifts, but did not compensate them for this pre-shift time.  (*Id*.)  Smith sought payment for the time he spent at the roll-call sessions from April 17, 2008 through December 4, 2011 at the hourly rate provided for in the Collective Bargaining Agreement ("CBA") between Motor City and Smith's labor union.  (Wage and Hour Division Determination Summary at 1; Not. of Removal, Ex. B, Motor City Appeal Letter.)  The investigator informed Smith that the statute of limitations in the Wage and Hour Division is 12-months for wages and thus, his claim would be limited to the period of February 4, 2011 to December 4, 2011.  (*Id.*)  Mr. Smith sent the Wage and Hour Division a copy of the parties' Collective Bargaining Agreement as well as pay stubs to support the wage amount being claimed.  (*Id*.)

The Wage and Hour Division sent a notification letter to Motor City on February 13, 2012 advising them of Smith's wage claim and requesting time and payroll records.  (*Id*.)  No records were produced and the investigator sent a (corrected) notice to produce on March 9, 2012.  (*Id*.)  Subsequently, the investigator spoke with a representative of the Motor City Human Resources ("HR") Department and explained the allegation in the claim.  (*Id*.)  On March 14, 2012, the

2

investigator also spoke with the Casino's Vice President of HR, Josephine Avery, to discuss the documents and records the Wage and Hour Division wanted to review. (*Id.*) At that time, Ms. Avery advised that the issue of security guards being compensated for roll-call time had gone to arbitration in 2004 and was resolved in favor of the Casino. (*Id.*) After reviewing the arbitration decision, however, the investigator informed Ms. Avery that Mr. Smith's claim would remain open because the investigator believed the decision "left enforcement of wage for the time in question open to interpretation of the law." (*Id.* at 2.)

On March 27, 2012, the Wage and Hour Division received from Motor City the time records for Mr. Smith. (*Id.*) The investigator sent a "findings letter" to Motor City on May 1, 2012 advising that wages had been found due to Mr. Smith in the amount of $700.05. (*Id.* at 3.) Motor City advised that they intended to appeal the finding. (*Id.*) On June 6, 2012, because the claim was not settled, the Wage and Hour Division issued a Determination Order finding that Motor City owed Smith $700.50 in unpaid wages, plus interest. (Not. of Removal, Ex. B, Determination Order.) The Order informed the parties that they had 14-days to appeal the determination. (*Id.*)

On June 13, 2012, counsel for Motor City sent a letter to the Wage and Hour Division requesting that the Determination Order be set aside. (Not. of Removal, Ex. B, Appeal Letter at Pg ID 19-21.) Counsel argued:

> Mr. Smith erroneously assumes that the 15 minutes of "roll call" he was required to attend while employed by MotorCity should be deemed "time worked" under the CBA. Thus, Mr. Smith apparently asserts that because MCLA 408.471 requires payment for "time worked" and the "roll call" time constitutes "time worked" under the CBA, the "roll call" time is compensable. That is incorrect.
>
> As you will note, the enclosed CBA provides for management rights in Article VII, and defines hours of work for which employees must be paid in Article XII. On February 20, 2004, Arbitrator Mario

3

> Chiesa issued his Opinion and Award, a copy of which is also enclosed, denying a grievance filed by the [Union] that asserted the same rights being asserted by Mr. Smith in connection with his claim now.   Arbitrator Chiesa found that MotorCity could require employees covered by the CBA to attend roll call, but also that MotorCity was not required to pay for attendance at roll call, because the CBA did not define roll call as involving "hours of work." Instead, by virtue of past practices incorporated into the CBA, attendance at roll call did not involve compensable time worked.

(*Id*. at 19-20.)  Motor City counsel further argued, with citation to legal authority, that claims implicating a collective bargaining agreement are preempted by the Labor Management Relations Act, 29 U.S.C. § 301, *et seq.,* and thus, Smith's claim should be dismissed.  (*Id*. at 20.)

The Wage and Hour Division treated this letter as an appeal of the Determination Order.  On June 15, 2012, the Wage and Hour Division sent a letter to the parties advising that:

> An appeal has been received in the above referenced case [Angelo W. Smith vs. Detroit Entertainment L.L.C. d/b/a Motor City Casino, Claim #167450].  As a result of this appeal, the case has been referred to the Michigan Administrative Hearing System with the Michigan Department of Licensing and Regulatory Affairs.

(Not. of Removal, Ex. B at Pg ID 14.)[1]

On June 21, 2012, the Michigan Administrative Hearing System ("MAHS") sent the parties a "Notice of Hearing" advising that a "formal administrative hearing" had been scheduled for July 23, 2012 before an Administrative Law Judge.  (Not. of Removal, Ex. B, Notice of Hearing at Pg ID 22.)  The Notice identified the Issue for the hearing as, "has Respondent violated the statutory provisions as alleged in the Formal Complaint?"  (*Id*.)

---

[1] According to Plaintiff, the Michigan Administrative Hearing System is "an independent and autonomous agency within the Department of Licensing and Regulatory Affairs established specifically to provide hearings for most agencies in Michigan state government."  (Dkt. 8, Mot. To Remand at ¶ 4.)

4

**B.      Removal To Federal Court**

On July 6, 2012, Motor City removed this action from the MAHS to this Court pursuant to

28 U.S.C. §§ 1331, 1441, and 1446, and Section 301 of the Labor Management Relations Act

("LMRA").  (Dkt. 1.)  Similar to the argument raised in its Appeal Letter to the Wage and Hour

Division, Motor City's Notice of Removal contends that this case implicates a federal question:

> Because resolution of the validity of the Wage & Hour Division and
> Smith's claim [for compensation at roll-call] is dependent upon the
> proper interpretation of the CBA, this action is completely preempted
> by § 301 of the LMRA.  See, e.g., *Allis-Chalmers Corp. v. Lueck*, 471
> U.S. 202, 210 (1985) (a lawsuit, even if brought solely under state
> law, that alleges a "violation of a provision of a labor contract *must*
> be brought under § 301 and be resolved by reference to federal law");
> and OAG, 1990, No. 6649 (July 11, 1990) (attached as Exhibit A, in
> which Michigan Attorney General Kelley opined that "Section 301(a)
> of the federal Labor Management Relations Act of 1947 preempts the
> Michigan Department of Labor from determining state law claims for
> wages and fringe benefits brought by employees under [MWFBA]
> where enforcement of the state law claim would require the
> interpretation of a collective bargaining agreement").

(*Id*. at ¶ 3.)

On August 6, 2012, Plaintiff filed the pending Motion to Remand.  (Dkt. 8, Mot. To

Remand.)  Plaintiff contends that removal was improper for several reasons: Motor City's Notice

of Removal was not timely filed; Smith's wage complaint does not involve a "federal question;"

MAHS is not a "State court" under the removal statute, 28 U.S.C. § 1441(a); and Motor City failed

to exhaust its administrative remedies.  (*Id*. at ¶ 7.)  In response, Motor City relies on its § 301(a)

preemption argument.  Defendant contends that preemption not only creates a federal question, but

is such an important federal right that, under the "functional equivalent" test adopted by the First

and Seventh Circuits, the MAHS is the "functional equivalent" of a "State court" such that removal

was  proper.  (Dkt. 10, Resp.)

## II.   ANALYSIS

### A.   Legal Standard

Removal to federal court is governed by 28 U.S.C. § 1441(a) which demands,

> except as otherwise provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

The party seeking removal "bears the burden of establishing its right thereto." *Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989).

Federal district courts have "original jurisdiction" within the meaning of 28 U.S.C. § 1441(a) over "all civil actions arising under the Constitution, law, or treaties of the United States." *See* 28 U.S.C. § 1331; *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757-58 (6th Cir. 2000) (reasoning that the "arising under" language in former § 1441(b) "is almost identical" to that in § 1331," and, therefore, "the scope of removal jurisdiction based on the existence of a federal question under § 1441(b) is considered to be identical to the scope of federal question jurisdiction under § 1331."). Here, the preemptive force of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, likely gives this Court original jurisdiction over Smith's wage claim for compensation at pre-duty roll call. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6-8 (2003) (recognizing that § 301 of the LMRA has a "'powerful' preemptive force," because Congress intended it to completely preempt all state-law causes of action: "a claim which comes within the scope of [§ 301], even if pleaded in terms of state law, is in reality based on federal law").

While original jurisdiction is a necessary condition for removal, it is not sufficient. The Court must still determine whether this case was properly removed from the Michigan

Administrative Hearing System — i.e., whether this case was removed from a "State court" as that term is used in 28 U.S.C. § 1441(a). At oral argument, the parties acknowledged that they are not aware of any prior proceeding being removed from MAHS or its predecessor agency to federal court.

### B.    MAHS Is Not A "State Court"

#### 1.    The Court Should Adopt the "Literal Test" for Determining Whether MAHS is a "State court"

As noted, a defendant may only remove proceedings originating in a "State court." 28 U.S.C. §§ 1441(a), 1446(a). The Sixth Circuit Court of Appeals has not yet considered the question of whether a state administrative agency may be considered a "State court" for purposes of removal. And there is a split among the Courts of Appeals regarding the issue: "Several circuits have applied a functional test, allowing removal in cases in which a state administrative agency functions as a court. Other courts have found it impermissible to ever remove an action pending before a state agency 'regardless of how court-like the proceedings may be,' applying what might be termed a 'literal test.'" *Rockville Harley-Davidson, Inc. v. Harley Davidson Motor Co.*, 217 F. Supp. 2d 673, 676 (D. Md. 2002) (citations omitted).

Defendant here urges the Court to adopt the reasoning of the First and Seventh Circuits, which have applied the "functional test" in determining whether a state agency like MAHS may be considered a "State court" from which a proceeding may be properly removed. *See Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Bd.*, 454 F.2d 38 (1st Cir. 1972); *Floeter v. C. W. Transp., Inc.*, 597 F.2d 1100 (7th Cir. 1979). This test involves two steps:

> First, the court must evaluate "the functions, powers, and procedures of the state tribunal" in order to consider whether the entity functions as a court. Second, the court must consider "the respective state and

7

federal interests in the subject matter and in the provision of a
forum."  The federal court should assume jurisdiction only if the
agency functions as a court and federal interests predominate over
state interests.

*Floeter*, 597 F.2d at 1102; *see also Volkswagen de Puerto Rico, Inc.*, 454 F.2d at 44.[2]  In both

*Volkswagen* and *Floeter*, the courts considered whether state labor agencies were "State court[s]"

from which proceedings brought under Section 301(a) of the LMRA could be removed.  Both cases

involved violations of a collective bargaining agreement being pursued in a state agency whose

procedures were substantially similar to those traditionally associated with the judicial process, and

thus, the courts found the functional equivalent test to be satisfied.  Additionally,  the only court in

this Circuit to have addressed this issue applied the functional equivalence test.  *Ford Motor Co. v.*

*McCullion*, No. 87-1459; 88-142, 1989 U.S. Dist. LEXIS 19116, at *8 (S.D. Ohio  Apr. 14, 1989)

(finding that the Ohio Motor Vehicle Dealers Board was not the functional equivalent of a state

court for purposes of removal under §1441(a) "because the state's 'substantial interest in preserving

the validity of its administrative infrastructure' completely outweighed the 'lack of a federal

interest.'").  Motor City concedes that MAHS is an agency and not a court, but argues that removal

is proper under the functional equivalence test because (1) the MAHS performs court-like functions,

---

[2] The functional approach developed from the Supreme Court's decision in *Upshur Cnty. v. Rich*, where the Court considered removal of a tax assessment from a "county court."  135 U.S. 467, 477 (1890).  In *Upshur Cnty.*, the Court held that in spite of the entity's title of "county court," the case was not a removable "suit" under the removal statute.  *Id.*  In reaching its decision, the Court considered the powers, composition, and procedure of the county court, concluding "this is not a judicial body, invested with judicial functions, except in matters of probate; but is the executive or administrative board of the county, charged with the management of its financial and executive affairs."  *Id.*  This Court agrees that, "[i]t does not follow that because *Upshur* [*County*] held that a court is not necessarily a 'court' for removal purposes, the Supreme Court has endorsed the view that an administrative agency might be a 'court' for removal purposes."  *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1263 (3d Cir. 1994).

and (2) the preemptive force of the federal LMRA predominates over any state interest. (Resp. at 5-9.) The Court need not analyze the nature and type of functions performed by the MAHS because it concludes that the "literal test" is the better approach, and that under that test, MAHS is not a "State court" within the meaning of § 1441.

In *Oregon Bureau of Labor and Indus. ex rel. Richardson v. U.S. West Comm. Inc.*, 288 F.3d 414, 419 (9th Cir. 2002), the Ninth Circuit rejected the functional test and adopted a strict construction of the removal statute. *Id*. at 418-19. The court found that the "functional test goes beyond the language of the statute, because the functional test is a judicially-developed analysis that neither appears in nor is necessarily implied by, the statutory language." *Id*. at 418. The court found the term "State court" to be unambiguous: the "plain language of 28 U.S.C. § 1441(a) limits removal to cases pending before a 'state court' . . . . The term is clear and consistent with the overall statutory scheme for removals because it is used repeatedly throughout the removal statutes and is the only term used in reference to the tribunal from which removal may be taken." *Id*. at 417-18. In remanding the case back to the Oregon Bureau of Labor and Industries, the court concluded that § 1441 "does not authorize removal of proceedings from an administrative agency, regardless of how court-like the proceedings may be." *Id*. at 419.

The Tenth Circuit has also adopted the literal test. *Porter Trust v. Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1*, 607 F.3d 1251 (10th Cir. 2010). As the *Porter* court explained:

> More recent authority has rejected or severely limited the "functional" test in favor of a standard application of the canons of statutory construction. This better analysis begins (and ends) with § 1441's plain language, which permits removal only from a "state court," "which necessarily implies that the entity must be a *court* . . .[not] an administrative agency . . . that . . . conducts court-like adjudications." *Ore. Bureau of Labor*, 288 F.3d at 418. Even courts that once applied the functional test now appear to have

9

repented to some degree.  *See Sun Buick, Inc. v. SAAB Cars USA, Inc.*, 26 F.3d 1259, 1261-67 (3d Cir. 1994) (casting serious doubt on "functional" test; distinguishing *Baughman* in § 1441(a) removal context); *Borough of Olyphant v. Pa. Power & Light Co.*, 269 F. Supp. 2d 601, 602-03 (M.D. Pa. 2003). *Cf. Wirtz Corp. v. United Distillers & Vintners N. Am., Inc.*, 224 F.3d 708, 713 (7th Cir. 2000) (limiting holding in *Floeter* to particular facts of that case).

Having determined that the appropriate test involves application of the plain language of § 1441(a) rather than a functional test, we now apply that plain language to the facts of this case.  Although the Board exercises a judicial function in de-annexation proceedings, it is an administrative rather than a judicial entity.  Under the plain language test, it does not fit the definition of a "state court" for purposes of § 1441(a).

*Id.* at 1254-55.

Similarly, in the absence of any explicit guidance from the Second Circuit, a district court in New York has also followed this trend:

For years, federal courts applying this issue to particular administrative agencies did not necessarily rely on the plain language of the removal statute.  Instead, courts would rely on a "functional test" under which they would assess the extent to which a state administrative agency had the power to conduct hearings, summon witnesses, issue orders, and enforce those orders.  *See, e.g., Floeter v. C. W. Transport, Inc.*, 597 F.2d 1100, 1102 (7th Cir. 1979) ("We hold that the title given a state tribunal is not determinative; it is necessary to evaluate the functions, powers, and procedures of the state tribunal and consider those factors along with the respective state and federal interests in the subject matter and in the provision of a forum.") (citing *Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Bd.*, 454 F.2d 38, 44 (1st Cir. 1972)) and Note, *Removal to Federal Courts from State Administrative Agencies*, 69 Yale L.J. 615 (1960).

Working against defendants' removal, however, is the more recent trend away from functional analysis and toward the plain language of the removal statute.

*NY State Div. of Human Rights v. Folino*, No. 11-569A, 2011 U.S. Dist LEXIS 74146, at *4-5 (W.D.N.Y. July 11, 2011) (finding New York State Division of Human Rights was not a state court);

10

*see also Johnson v. Albertson's LLC*, No. 08-236, 2008 U.S. Dist. LEXIS 60230, at *7 (N.D. Fla. Aug. 6, 2008) (adopting the reasoning of the Ninth Circuit and concluding its analysis "need not extend beyond [§ 1441(a)'s] plain language, which does not authorize removal of proceedings to this forum from an administrative agency, including the Florida Commission on Human Relations' Division of Administrative Hearings."); *Civil Rights Div. v. Asplundh Tree Expert Co.*, No. 08-60493, 2008 WL 2616154, at *5 (S.D. Fla. May 15, 2008) (rejecting the "functional test" as going "beyond the language of [§] 1441, which does not authorize the removal of proceedings from administrative agencies"); 14B, Wright Miller, Cooper, and Steinman, *Federal Practice and Procedure*, §3721 (4th ed.) (explaining that "[t]he removal statute similarly does not authorize the removal of an administrative proceeding.  Federal courts have been reluctant to predicate removal on the theory that administrative proceedings are functionally equivalent to judicial proceedings.")

        This Court is persuaded by the reasoning of the cases applying the literal test.  There is nothing in the text of § 1441 which authorizes the removal of cases from state administrative agencies to federal court.  If Congress had intended "State court" to mean administrative agencies that function like a state court, it could have easily so provided.  *See Folino*, 2011 U.S. Dist LEXIS 74146, *5-6 (explaining that § 1441(a) "does not mention administrative agencies or administrative proceedings; in fact, the statute does not even use  ambiguous language like 'tribunal' or 'decision-making body' that might allow for an assessment of an agency's functions.  Of all of the different governmental entities at the state and local level that make and enforce decisions, Congress chose only one type of entity – state courts – to subject to the federal removal process."); *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (Rehnquist, J. for four justice plurality) ("The preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a

11

statute what it means and means in a statute what it says there. . . . Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." (citations and internal quotation marks omitted)).

The Court acknowledges that Section 301(a) of the LMRA covers one of the few substantive areas of law by which Congress has completely preempted available state remedies and causes of action. Indeed, it appears that the courts in *Volkswagen*, and *Floeter* adopted the functional equivalence test to honor Congress' desire for a federal forum for Section 301(a) proceedings. However, not only is there concurrent jurisdiction for Section 301(a) claims, but § 1441(a) begins, "*Except as otherwise expressly provided by Act of Congress*, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . ." 28 U.S.C. § 1441(a) (emphasis added). Thus, rather than the courts struggling to re-define "State court," Congress may, if it so desires, amend the LMRA to provide an explicit removal clause for actions filed in state agencies that are adjudged to be preempted by Section 301(a).

2.     *Removal statutes are narrowly construed*

Additionally, expanding the construction of the removal statute is inconsistent with the Supreme Court's instruction that § 1441 should be construed narrowly, with any doubts about the propriety of removal being resolved in favor of remand. *Province of Ontario*, 874 F.2d at 339 ("The removal petition is to be strictly construed, with all doubts resolved against removal.") The United States Supreme Court has explained the rationale for this rule as follows:

> The power reserved to the [S]tates under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution. "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction

12

> to the precise limits which the statute has defined." *Healy v. Ratta*, 292 U.S. 263, 270, 54 S. Ct. 700, 78 L. Ed. 1248 . . . .

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941). The Sixth Circuit has further explained:

> The Supreme Court's command that federal courts must exercise jurisdictional restraint is perhaps even more compelling in the context of removal than in the context of original jurisdiction. The decision whether to remove a suit to federal court directly implicates the constitutional allocation of authority between the federal and state courts. The federal judiciary must respect the important objectives the framers sought to achieve when they carefully crafted our federal system and its concomitant national government of limited powers. Absent specific Congressional command, the expansion of removal jurisdiction by the courts would seem to undermine these important constitutional considerations.

*Polkow v. CSX Transp.*, 431 F.3d 543, 555 (6th Cir. 2005); *see also Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000) ("Because they implicate federalism concerns, removal statutes are to be narrowly construed."); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999) ("In interpreting the statutory language, we are mindful that the statutes conferring removal jurisdiction are to be construed strictly because removal jurisdiction encroaches on a state court's jurisdiction."); *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 454 (6th Cir. 1996) ("Due regard for state governments' rightful independence requires federal courts scrupulously to confine their own jurisdiction to precise statutory limits."). In short, removal statutes are strictly construed "to promote comity and preserve jurisdictional boundaries between state and federal courts." *Sheridan v. New Vista, LLC*, 406 F. Supp.2d 789, 792 (W.D. Mich. 2005).

For example, while not yet addressing the scope of "State court," the Sixth Circuit has narrowly construed the term "defendant" in §1441. In *First Nat'l Bank of Pulaski v. Curry*, 301 F.3d 456 (6th Cir. 2000), the Sixth Circuit ruled that a third-party defendant does not have a statutory

right of removal because "third-party defendants are not 'defendants' for purposes of § 1441(a)."
*Id*. at 462.  Likewise, state administrative agencies, like MAHS, are not "State courts" for purposes
of § 1441(a).

> 3.      *The removal procedures support remand*

To further significant interests of comity and federalism, a federal court must also strictly
construe 28 U.S.C. § 1446(b), which provides the procedures for removal, and resolve any
ambiguity concerning the scope of removal under § 1446(b) in favor of remand.  *Brierly v. Alusuisse
Flexible Packaging, Inc*., 184 F.3d 527, 534 (6th Cir. 1999).

These procedural requirements further suggest that Congress did not intend removal from
an administrative agency like MAHS:

> The notice of removal of a civil action or proceeding shall be filed
> within thirty days after the receipt by the defendant, through service
> or otherwise, of a copy of the *initial pleading setting forth the claim
> for relief upon which such action or proceeding is based*, or within
> thirty days after the service of summons upon the defendant if such
> initial pleading has then been filed in court and is not required to be
> served on the defendant, whichever period is shorter. . . .

28 U.S.C. § 1446(b) (emphasis added).  Motor City did not remove this action within 30-days from
the filing of Smith's initial claim with the Wage and Hour Division.  Motor City acknowledges that
it "could not possibly have removed a mere administrative investigation, and then argued, as it
would have to, that removal at that juncture was removal from a "State court."  (Resp. at 9.)
However, nothing in § 1446(b) supports Motor City's contention that the 30-days should run from
the Wage and Hour Division's initial determination or the "notice of hearing which formally placed
the underlying claim before the MAHS."  (Resp. at 9.)  These are not, in the language of 28 U.S.C.
§ 1446(b), "initial pleading[s] setting forth the claim for relief upon which such action or proceeding

14

is based."

Motor City relies on *McCullion* for the proposition that "ordinarily, a proceeding before a state agency becomes a removable action *only* after it is appealed." *McCullion,* 1989 U.S. Dist. LEXIS 19116, at *6 (citing *In re Registration of Edudata Corp.*, 599 F. Supp. 1089 (D. Minn. 1984)). But the Court in *McCullion* was referring to an appeal from the state agency to "State court," which, under this Court's construction, would be proper pursuant to §1441. The Court was not, as Motor City suggests, referring to an intermediate appeal from one administrative agency to another. Indeed, in *Edudata*, the case cited by *McCullion*, the court explained that "[i]n general, a proceeding before a Minnesota agency becomes a civil action removable under §1441 only after it is appealed." *Edudata Corp.*, 599 F. Supp. at 1091. Similarly here, under the Michigan Administrative Procedures Act, the parties can appeal a decision by the MAHS to state circuit court. Mich. Comp. Laws §§ 24.301 and 24.303. Once a case is filed in circuit court, i.e., a "State court," it would then be removable under §1441– assuming the procedural requirements of §1446 are met. The *Edudata* ruling – which granted a motion to remand an administrative proceeding – does not support Motor City's contention that the 30-day time frame for removal does not begin until an administrative agency issues a notice of hearing. Indeed, as one court stated in finding removal from a state agency to be untimely pursuant to § 1446(b):

> Defendant contends that it first received a copy of the initial pleading on March 3, 2005 when it received [State of Maryland Office of Administrative Hearings'] Notice of Hearing, "which advised, *inter alia*, that a hearing in *P.S.W. v. Hartford* had been scheduled for April 4, 2005, at 1:00 p.m." . . . To be frank, Defendant's position strains credulity, as it asserts that notice of a hearing is tantamount to a copy of the initial pleading. The Court simply does not accept Defendant's position, and finds there to be numerous prior documents received by the Defendant, all formally sent and received before February 28, 2005, which triggered the 30-day requirement.

15

*Woodruff v. Hartford Group Life Ins., Co.*, 378 F. Supp. 2d 546, 549 (D. Md. 2005).

Similarly here, Smith's initial complaint with the Wage and Hour Division and Motor City's notice of the same, occurred in February and March, 2012. Motor City did not remove within 30-days of these events because, even under the functional equivalent test, the Wage and Hour Division is not a "State court." That Motor City believes MAHS is the functional equivalent of a state court for purposes of section 1441 does not alter the procedural requirements of section 1446. To this Court, the difficulty in applying the 30-day requirement of §1446(b) to the MAHS proceeding – and again, the need to basically rewrite the statutory provision – is further evidence that §1441(a) does not apply to removals from administrative agencies.

Lastly, the fact that Motor City may have another avenue to federal court does not affect the removal analysis. In *Complete Auto Transit* v. *Howe,* No. 88-70863, 1989 U.S. Dist. LEXIS 18092 (E.D. Mich. Sept. 5, 1989), the plaintiff's employee filed a complaint with the Michigan Department of Labor Bureau of Employment Standards (MDOL) (the predecessor of MAHS), after an unsuccessful union grievance, alleging that the deduction of a fine from his paycheck violated the Michigan Payment of Wages Act. Following an ALJ ruling favorable to the claimant, the company filed a complaint in federal court seeking a declaratory judgment that MDOL had no jurisdiction to hear the claim and that section 301 of the LMRA completely preempted the state claim. The District Court granted summary judgment on preemption, vacated the ALJ ruling, and declared that MDOL lacked jurisdiction over the matter. *Id.* at *11. Here, Motor City argued in its appeal letter to the Wage and Hour Division that Smith's state-law claims are preempted and should be dismissed. Motor City recognizes that this is a determination that can be made by the state agencies and/or by a state court on appeal. Moreover, as in *Howe*, Motor City can bring a separate action in federal

16

court which may force the claimants to sue in federal court or in state circuit court (from which Motor City might then be able to properly remove).  However, the fact that this case might ultimately end up in federal court by other routes does not mean that removal is the proper course.

### C.   Havard v. MotorCity Casino

This case was recently consolidated with the virtually identical case *Andre Havard and State of Michigan, Department of Licensing and Regulatory Affairs, Wage and Hour Division v. Detroit Entertainment, L.L.C, d/b/a Motor City Casino,* No. 12-cv-13427.  Mr. Havard, like Mr. Smith, is a former Motor City security guard that filed a claim with the Wage and Hour Division seeking to recover unpaid compensation for time spent at pre-shift roll calls.  As it did here, Motor City removed the action to federal court (*id*. at Dkt. 1) and the Wage and Hour Division filed a Motion to Remand (*id.* at Dkt. 9).  That Motion has also been referred to this Court.  (*Id*. at Dkt. 10.)  The legal issues in the two Motions are the same.  Thus, for all of the reasons set forth above, this Court also recommends that the Motion to Remand the Havard claim be GRANTED.

## III.  CONCLUSION AND RECOMMENDATION

The Michigan Administrative Hearing System is not a "State court."  Accordingly, the Court RECOMMENDS that the Wage and Hour Division's Motions to Remand be GRANTED.

## IV.  FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections,

but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Motor Citylanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office.  *See* E.D. Mich. LR 5.1.  A copy of any objections is to be served upon this magistrate judge but this does not constitute filing.  *See* E.D. Mich. LR 72.1(d)(2).  Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).


s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated:  October 31, 2012


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 31, 2012.


s/Jane Johnson
Deputy Clerk